STATE OF NORTH CAROLINA v. COURTNEY SEMAJ WADE

No. COA06-302

(Filed 2 January 2007)

### 1. Sentencing— prior record level—use of worksheet—stipulation

The trial court did not err in determining defendant's prior record level from the State's sentencing worksheet where defense counsel immediately began describing mitigating factors without objecting to any of the convictions on the worksheet and thus stipulated to those convictions.

### 2. Evidence— fingerprint—impression during crime

The trial court did not err by denying defendant's motion to dismiss charges of assault, safecracking, robbery and first-degree burglary where the State's only evidence linking defendant to the crimes was a fingerprint; defendant stated to a detective that he had never been to the victim's house; the victim testified that he was the only person with a key to the closet where the fingerprint was found; and the victim testified that the robbers broke into the closet.

### 3. Kidnapping— restraint and removal—incident · to other crimes

The trial court erred by denying a motion to dismiss a kidnapping charge where robbery and assault were also charged, and the confinement, restraint or removal were part of those crimes.

Appeal by defendant from judgment entered 1 July 2005 by Judge Henry E. Frye, Jr. in Moore County Superior Court. Heard in the Court of Appeals 12 October 2006.

*Attorney General Roy Cooper, by Melissa L. Trippe, Special Deputy Attorney General, for the State.*

*Haral E. Carlin for defendant-appellant.*

STEELMAN, Judge.

Courtney Semaj Wade ("defendant") presents the following issues on appeal: (1) whether the trial court properly determined his prior record level; (2) whether the trial court erroneously denied defend-

ant's motion to dismiss the charges of assault with a deadly weapon with intent to kill inflicting serious injury, safecracking, robbery with a dangerous weapon, and first degree burglary at the close of the State's evidence and at the close of all the evidence; and (3) whether the trial court erroneously denied defendant's motion to dismiss the charge of second degree kidnapping at the close of the State's evidence and at the close of all the evidence. For the reasons set forth herein, we vacate in part and find no error in part.

Evidence presented at trial tended to show that James Edward Parker, Jr. ("Parker"), moved to Southern Pines in September of 2001 after inheriting a house from his grandmother. Parker's uncle had previously lived in the house. Parker was renovating the house. His son was handling the renovations, and placed a safe in the bathroom closet to keep cash for making payments to contractors working on the house. Parker testified that $10,000.00 in cash was in the safe on 30 November 2003.

Several days prior to 30 November 2003, Parker noticed an unfamiliar female walking on his property. He invited her into his house and offered her a drink. While she was in the house she went into the bathroom. Parker gave her $30.00 when she said she needed money for her daughter.

On the night of 30 November 2003 two intruders entered the house of Parker. Parker was awakened by a noise in the house. He found two males in his living room. They began punching him, striking him with a gun, and asking him where the money was. The intruders stated they heard that there was a safe in the house. Parker told the intruders that the safe was located in the bathroom but that he did not have a key to the safe. The intruders proceeded to the bathroom but had difficulty in opening the safe. One of the intruders again hit Parker and attempted to drag him through the living room while the other tried to open the safe. After kicking the intruder, Parker was able to escape, and run to his neighbor's house for help. Parker did not recognize the intruders or get a good look at their faces.

Marvin Wright ("Wright"), a detective with the Southern Pines Police Department, responded to Parker's house. In canvassing the house for evidence, Wright noticed a safe in the bathroom closet which had been broken into. There were no legible fingerprints on the safe. In the same closet above the safe was a box containing a microscope. Two latent fingerprints were discovered on the microscope box. These were subsequently identified by Kathleen Farrell, a foren-

sic fingerprint examiner with the Fayetteville Police Department, to be those of defendant.

On 9 December 2003, a search warrant was executed for the house of Tim and Rasheema Wade Kelly, who were relatives of defendant. A handgun, a magazine with nine rounds, $1800.00 in $100 bills, and a tire iron were found on the premises. A blood and DNA analysis of the handgun was performed by Special Agent Jennifer Elwell. The DNA on the handgun matched that of Parker. Defendant was arrested on 12 December 2003 with five $100 bills in his possession.

A former girlfriend of defendant provided alibi testimony for defendant at trial. She testified that they were in Fayetteville, North Carolina, on the evening of 30 November 2003.

The jury returned verdicts of guilty of assault with a deadly weapon inflicting serious injury, first-degree kidnapping, first-degree burglary, robbery with a dangerous weapon, and safecracking. The trial court arrested judgment in part reducing the charge of first-degree kidnapping to second-degree kidnapping because defendant was also convicted and sentenced on the assault charge. In four separate judgments defendant was given consecutive active sentences totaling 208-288 months imprisonment. From these judgments, defendant appeals.

## Prior Record Level

[1] In his first argument, defendant contends that the trial court erred in determining defendant's prior convictions and prior record level. We disagree.

Defendant argues that the State failed to meet the requirements of N.C. Gen. Stat. § 15A-1340.14(f) to prove a prior conviction. Prior convictions can be proved by:

(1) Stipulation of the parties.

(2) An original or copy of the court record of the prior conviction.

(3) A copy of records maintained by the Division of Criminal Information, the Division of Motor Vehicles, or of the Administrative Office of the Courts.

(4) Any other method found by the court to be reliable.

N.C. Gen. Stat. § 15A-1340.14(f) (2005). The State bears the burden of proving that a prior conviction exists and that the defendant is the same person as the offender in the prior conviction. *State v. Eubanks*, 151 N.C. App. 499, 505, 565 S.E.2d 738, 742 (2002). Standing alone, a sentencing worksheet prepared by the State listing a defendant's prior convictions is insufficient proof of prior convictions. *Id.* A stipulation does not require an affirmative statement and silence may be deemed assent in some circumstances, particularly if the defendant had an opportunity to object and failed to do so. *State v. Alexander*, 359 N.C. 824, 828-29, 616 S.E.2d 914, 917-18 (2005).

During sentencing, the following colloquy occurred:

THE COURT: Are you ready to proceed with sentencing, Mr. D. A.?

[PROSECUTOR]: Yes, Your Honor, the State is ready.

THE COURT: All right. Are you ready to proceed with sentencing, Mr. Donadio [defense counsel]?

MR. DONADIO: Yes, Your Honor.

THE COURT: All right.

[PROSECUTOR]: May I approach, Your Honor?

THE COURT: Yes, sir.

So the State contends his prior record level will be II?

[PROSECUTOR]: That's correct, Your Honor.

THE COURT: All right. Mr. Donadio, I'll hear from you on sentencing, sir.

MR. DONADIO: Your Honor, Courtney is here this week supported by various members of his extended family. He has no prior conviction approaching this type of incident. He is a young man. He still has a lot maybe to learn and a lot that he can accomplish, and I would ask you to consolidate where appropriate and give him the benefit of a second chance at some point.

THE COURT: All right. So you would contend at least one mitigating factor; he has a support system in the community?

Because a sentencing worksheet was the only proof submitted to the trial court, we look to the dialogue between counsel and the trial court to determine whether defendant stipulated to the prior convictions which raised his prior record level to II. *State v. Cromartie*, 177

N.C. App. 73, 80, 627 S.E.2d 677, 682 (2006). In the instant case, defendant had an opportunity to object and instead of doing so, began describing mitigating factors to the trial court. At no time did defendant object to any of the convictions on the worksheet. *See Alexander*, 359 N.C. at 830, 616 S.E.2d at 918. We hold that, under the circumstances, this constituted stipulation to defendant's prior convictions. This assignment of error is without merit.

## Denial of Motion to Dismiss Charges Other than Kidnapping

[2] In his second argument, defendant contends that the trial court erred in denying his motion to dismiss the charges of assault with a deadly weapon with intent to kill inflicting serious injury, safecracking, robbery with a dangerous weapon, and first degree burglary for insufficient evidence at the close of the State's evidence and at the close of all the evidence. We disagree.

When considering a motion to dismiss, the trial court must determine whether there is sufficient evidence of each essential element of the offenses charged or lesser included offenses, and whether the defendant was in fact the perpetrator. *State v. Mercer*, 317 N.C. 87, 96-97, 343 S.E.2d 885, 890-91 (1986). If there is sufficient evidence to submit the case to the jury, the motion to dismiss must be denied. *Id.*

Circumstantial evidence, if sufficient to draw a reasonable inference of the defendant's guilt, should be submitted to the jury for determination of actual guilt. *State v. Cutler*, 271 N.C. 379, 383, 156 S.E.2d 679, 682 (1967). Fingerprint evidence, if the only evidence circumstantial or otherwise tending to prove the defendant was the perpetrator of the crime charged, is insufficient to survive a motion to dismiss unless the jury can reasonably infer that the fingerprints could only have been impressed at the time of the crime. *State v. Irick*, 291 N.C. 480, 491-92, 231 S.E.2d 833, 841 (1977). Statements by the defendant that he had never been at the crime scene are sufficient to show that a fingerprint lifted from the premises could only have been impressed at the time of the crime. *See State v. Miller*, 289 N.C. 1, 5, 220 S.E.2d 572, 575 (1975).

In the instant case, the evidence before the trial court was sufficient to submit the case to the jury. The State's only evidence linking defendant to the crimes charged was a latent fingerprint on a microscope box that was kept in the same bathroom closet as the safe. The fingerprint was identified by an expert to be defendant's. Defendant stated to the detective processing him upon arrest that he had never

been to the victim's house. Defendant did not object to the admission of this evidence at trial and has not assigned plain error on appeal. In addition, Parker testified that he was the only person who had a key to the door of the bathroom closet, where the safe and microscope box were kept. Parker further testified that the robbers broke into the bathroom closet. We hold that the trial court did not err in denying defendant's motion to dismiss these charges. This argument is without merit.

## Denial of Motion to Dismiss Kidnapping Charge

**[3]** In his third argument, defendant contends that the trial court erred in denying his motion to dismiss the kidnapping charge at the close of the State's evidence and at the close of all the evidence because the State presented insufficient evidence of confinement, restraint, or removal separate from that inherent in the crime of robbery with a dangerous weapon. We agree.

Our standard of review is the same as that for the previously discussed motion to dismiss.

A defendant is guilty of kidnapping if he unlawfully confines, restrains, or removes an individual from one place to another without their consent if done for the purpose of facilitating the commission of a felony. N.C. Gen. Stat. § 14-39(a)(2) (2005). Our case law requires confinement, restraint, or "removal separate and apart from that which is an inherent, inevitable part of the commission of another felony." *State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981). "To permit separate and additional punishment where there has been only a technical asportation, inherent in the other offense perpetrated, would violate a defendant's constitutional protection against double jeopardy." *Id.*

In the instant case, due to the severe beating administered to Parker by the robbers, his testimony of exactly what occurred and the temporal sequence of events is far from clear. Taken in the light most favorable to the State, it appears that the taller robber (defendant) initially grabbed Parker. The other robber struck Parker with his fists. Parker was subsequently struck with a pistol, sank to the ground, and was then kicked. During the beating, the robbers repeatedly asked, "Where is the money at?" They also asked about the location of the safe:

> Q: At some point, Mr. Parker, did you tell them where the safe was?

A: Yes. I had to because they started dragging me towards the bathroom and I started feeling even more closed in, and all the while they were still beating me in the head and in the face with the gun.

Parker testified on several occasions that the robbers were "starting" to drag him. Based upon this testimony, Parker would only have been moved for a very short distance. At some point, defendant went to the bathroom, looking for the safe, leaving Parker with the other robber. This robber grabbed Parker under both arms, then grabbed him by the legs, removing one of his socks. When the robber was grabbing Parker's legs, Parker kicked him and used the opportunity to effect his escape. Parker thought that the robber may have been preparing to tie him up, but there was no testimony that the robber attempted to tie him up or actually did tie him up.

The trial court charged the jury that any confinement, restraint, or removal had to be a separate act independent of and apart from robbery with a dangerous weapon or assault with a deadly weapon inflicting serious injury.

The State argues that the facts before us are similar to those in *State v. Raynor*, 128 N.C. App. 244, 495 S.E.2d 176 (1998), an armed robbery case in which this Court held that the evidence supported a separate conviction for kidnapping. We disagree. In *Raynor*, the victim was removed from the bedroom, where the robbery took place, to the kitchen, for purposes of tying the victim up. *Id.* 128 N.C. App. 247, 495 S.E.2d 177. The facts in the instant case are distinguishable from those in *Raynor*. Parker was not removed from one room to another nor was there any evidence of binding. These facts are more similar to *State v. Ross*, 133 N.C. App. 310, 315, 515 S.E.2d 252, 256 (1999), where this Court vacated the defendant's second-degree kidnapping charge because the victim was not exposed to a greater danger than that inherent in the armed robbery. In *Ross*, the defendant and his accomplices took the victim to his bedroom looking for property to steal. Because the victim was taken to his bedroom as part of the armed robbery, he was not exposed to a greater danger than that inherent in the armed robbery. *Id.*

This is a peculiar case, in that defendant was charged not just with robbery with a dangerous weapon but also with assault. The trial court correctly charged the jury that the confinement, restraint, or removal had to be separate and apart from that inherent in the commission of the other two offenses. Any confinement and restraint was

inherent in the assault of Parker. The removal was inherent in the robbery with a dangerous weapon, based upon Parker's testimony that the robbers were "dragging" him toward the location of the safe. While the acts of defendant and his confederate were vile and reprehensible, we are unable to discern how any confinement, restraint, or removal of Parker was not an inherent and integral part of either the robbery with a dangerous weapon or the assault. Under the rationale of *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446, we are compelled to vacate defendant's conviction for second-degree kidnapping.

Having vacated the second-degree kidnapping charge, it is unnecessary for us to address defendant's other assignment of error related to that charge. *See Ross*, 133 N.C. App. at 315, 515 S.E.2d at 256.

Defendant's conviction for second-degree kidnapping is vacated. We find no other error in defendant's trial.

VACATED in part; NO ERROR in part.

Judge GEER concurs.

Judge STEPHENS concurs prior to 31 December 2006.